This case arises from an incident that occurred on the night of January 28th, 2008 at the appellant's private residence located in Broward County, Florida. On that night at approximately 11 o'clock, the appellant, Judge Danvers Long, was asleep in his bed when he was awoken by his companion, Vanessa Castro, who's also the mother of their child. Is your challenge deal with the board's definition or application of good cause? Could you just describe to me what your challenge is, if any, with respect to that? Certainly. That's one of the issues we have raised on the appeal, and the amicus counsel from the ALJ will address it in more detail, Your Honor. But certainly, we feel in this case, good cause has been applied to a situation where it shouldn't have. What's wrong with the board's definition? I'm sorry. What's wrong with how the board described good cause? In this case, the way that the board described good cause is they talked about whether a nexus was required. Now, strictly speaking, nexus is not required on a good cause analysis, but it typically has been part of the analysis in the board's case law. Here, what the board essentially did was take a situation that occurred far outside of the workplace, where there was no evidence connecting the incident to the workplace, and decided to terminate an administrative judge on that basis. Well, let me understand. One of the things, they relied, for instance, on the ABA model and saying that they required to conduct themselves in a fitting manner, in a manner that promotes public confidence, integrity for the judiciary. Are you taking issue with what they said the standard is, or with respect to how you think they improperly applied the standard? Because it seems to me the standard they came up with for good cause does encompass an effect on his work and his position. I think the first part of my answer would be that I don't believe the agency has adopted the ABA model rules, although certainly they have been cited by the agency in prior good cause cases. Well, they accepted generally that undermined public confidence in the adjudicatory process. That's their standard for good cause. Do you take issue with that, or with how they applied it? How they applied it in this case, Your Honor. Because certainly you can imagine some off-duty misconduct by an administrative judge that on its face would be egregious enough, per se, to warrant discipline. For example, if there had been a criminal- Because it undermines public confidence, so you're okay with that standard? I'm okay with the standard. It was met here. But in this case, again, they took an incident that occurred far outside of the workplace. And again, you can imagine if Judge Long was convicted of these criminal charges, we would not be here today. The agency would have had all the evidence that it needed. But what happened in this case- Oh, wait a moment. Wait a moment. So you're saying that a criminal conviction for these acts would undermine public confidence, and it's a difference between a criminal conviction and a finding by the board? I think that there's a large difference between those two because, one, the board did not require any showing of intent here. And certainly, if you look at what Judge Long was charged with, he was charged with committing a domestic battery on his partner. If you look at the- Doing what? I mean, I- He was charged with a domestic- Maybe he hit somebody, and he's using an intent to injure them. I mean, that's sort of- Well, I think the main issue that has to be addressed before you can get to the good cause analysis is whether the board gave proper deference under this court's opinions in Habe and Leatherberry to the factual findings of Judge Giannossi. That's a different issue. But let's stick with what Judge Post was asking about, what the standard is. You seem to agree that these actions, if they resulted in a criminal conviction, could be supplied good cause, right? I think there's case law to support that because at that point, there's already been a determination that- Who's case law? The board's case law? Our case law? There's board case law about off-duty criminal convictions where it's already been shown by the evidence that the person committed the acts. Any criminal conviction? No, not any criminal conviction. And that's where the good cause line comes into play here because certainly there are some off-duty criminal convictions and off-duty misconduct where this court has said the board should not tread in these areas, and the board cannot discipline. I'm thinking of the Doe versus DOJ case is a good example. Oh, we didn't reach that question. But it's similar in that they both involved a stretching of the concept of off-duty conduct that a person could be disciplined for. So perhaps I'm not understanding Your Honor's questions about the good cause standard. I'm just surprised that you're saying that if a criminal conviction had occurred here, there would be good cause. Because once you've conceded that, it seems to me you've come close to giving a case of that. Apart from the claim about the better to defer to the AJ's finance. And I guess what I was thinking of, Your Honor, if there had been a criminal conviction, obviously the evidence presented at the trial would have been very different. We would have gone into the hearing with the criminal conviction already in place. It would have much more clearly defined what was going to be proven at the hearing as well. In this case, we have two widely divergent factual findings. We have one from Judge Robert Genasi, who observed the witnesses, made expressed findings based on the demeanor of those witnesses that were very favorable to Judge Long. The board, although it acknowledged this court's precedent in Habe and Leatherbury. And it acknowledged that Judge Genasi's findings were based on demeanor. It then promptly ignored this court's holdings in Leatherbury and Habe, and it proceeded to balkanize the evidence. So what are the findings that were affected by the lack of evidence? You talk about the witnesses that were credited or not credited. The government talks about the witnesses that were credited or not credited. That seems to me not really the question. The question is, what findings of the AJ were set aside by the board? And then the question is, were those findings based on demeanor evidence? It seems to me there are only two findings that could be contested here by the AJ that were overturned by the board. One is the lack of provocation finding by the AJ, and the other one was the second specification related to the chop. Is there anything else where the AJ made a finding which was overturned by the board? Absolutely, Your Honor. I think the key issue in this case- On the issue of credibility. On the issue of credibility, absolutely. There was a finding by the board which is particularly significant that Judge Long did not show genuine remorse at the hearing. That was key to their penalty analysis. And Judge Giannassi made an express finding as he observed Judge Long testify that the remorse was sincere and that he therefore had a high possibility of rehabilitation. But the board said he didn't show remorse because he didn't admit what he did, that the board found that he did. Which is true, isn't it? I mean, there's no question about that, that he didn't admit the board's version of the facts. And as this court said in Habe, that sort of sets up a catch-22 where if the employee does not admit the conduct, his remorse cannot be sincere. Here we contested the conduct that occurred. And Judge Giannassi made findings that were, again, more favorable to Judge Long than the board. Judge Giannassi had a chance to observe his testimony at the hearing.  However, under this court's precedent in Habe and Leatherbury, the board has a very high burden to reverse those demeanor-based credibility findings. But I don't see that as a demeanor-based credibility finding about the remorse thing. I see that as a different standard for what constitutes remorse. Well, if you look at Judge Giannassi's factual findings, Your Honor, his demeanor-based credibility determinations really infused all of his factual findings. This is a case where we had primarily testimonial evidence. So in effect, put aside the remorse issue, put aside the provocation issue, put aside the second specification. What finding of the AHA was overturned? There's two of them. His finding on the language barrier. Now, although that's not strictly demeanor-based, Your Honor, but he had the- That's not an almost finding. That's just sort of an interim issue. What findings about, by the AHA, what happened were overturned by the- Well, as Your Honor pointed out, the provocation issue was significant in this case. Well, beside that, beside the provocation and the second specification. Well, the board completely rejected Judge Giannassi's findings that Judge Long and his companion were credible when they denied the key allegations of the agency. And again, what the board essentially did here is exactly what this court said you should not do in Hague. They tried to parse out different parts of the findings. I'm trying to address a different question. I'm going to say, what ultimate findings were overturned by the board? We've identified potentially two of them. What other findings were overturned? His factual findings on the penalty issue, they certainly overturned. What findings? His finding that Judge Long had high potential for rehabilitation, which was based on the testimony of two fellow AJs who worked with Judge Long. That testimony was not even mentioned by the board in its penalty analysis, and it was quite significant. So that's another instance where they reversed a credibility, a demeanor-based credibility finding by Judge Giannassi, and then used that substituted finding to essentially terminate Judge Long, where Judge Giannassi had only recommended a 45-day suspension. Essentially, Your Honor, what the board did on spec one is kind of interesting, because they affirmed Judge Giannassi. He found spec one had been proven. But they substituted a much more egregious set of facts that then allowed them to basically bootstrap spec one and spec two into a more egregious fact pattern that they could terminate on. One of the ways they did that, and this is a key issue in this case, is the admission of Ms. Castro's statement from the night of the incident. That was a key issue for the board, because they used that statement to bootstrap the testimony of the agency witnesses. Judge Giannassi excluded that statement based on a number of concerns that he had about its authenticity, how it was actually taken on the night of the incident. For example, the board said very clearly- Did the board weigh those factors in their own without needing to look at the credibility factor? Well, it's an abuse of discretion standard, Your Honor. So certainly- Or the admission of it. Right. And what Giannassi looked at was the circumstances under which that statement was taken. The officer who took the statement was not present to testify. The board, in its opinion, said the statement had been taken in English. But if you look at the record, it's quite clear, even agency counsel admitted, it was taken in Spanish. On that point, there's confusion in the record, and even in the AJ's opinion, they refer to that, that there was contradictory testimony. So I think that's a little bit of a stretch to criticize the board for doing something wrong. Well, Your Honor, if you look at the record on that particular issue, what happened there is that the agency purportedly had a tape of- we weren't sure whether it was the Spanish-language conversation or the officer's on-the-spot translation, but it was never produced to us. So I think Judge Giannassi was correct in being concerned about the admission of that particular statement. If you look at the agency's complaint, they virtually built their entire case around it. And if that statement is not in the case, then much of the agency's argument, much of its case collapses. I'm down to two minutes and 56 seconds, so if Your Honors have no more questions now, I would like to reserve my rebuttal time. Okay. Thank you. Ms. Stegner. Good morning. Good morning. May it please the Court. This case represents not only a miscarriage of justice as it pertains to Judge Danvers Long, but it sets a very dangerous precedent for the 1,500 United States Administrative Law Judges, which are the largest administrative judiciary in the world. If this MSPB ruling is allowed to stand, we are going down a slippery slope, indeed, in permitting a federal agency to target and remove judges for dubious or political reasons. Do you agree that if he'd been criminally convicted for domestic abuse, misdemeanor domestic abuse, that that would be a ground for removal under the good cause standard? If the agency has a rule that says that conviction for misdemeanor is a cause for removal, yes. But here, what we have is an amorphous standard, a superhuman standard, which judges cannot possibly live up to. I mean- What is the problem here? Do you say that that's because it undermines the public confidence? It's too amorphous that judges can't live up to not undermining public confidence? I'm sorry, I don't understand the question. What standard? You're saying you're attacking the standard as being something you can't live up to. Would you identify what standard it is you're attacking? Sure, sure. Yes. I mean, the management judges who testified in this case and the thrust of the agency's case, agency being SSA, was that we've got a position description for federal ALJ, and we've got the ABA model code for the judiciary. SSA has never adopted the model code and, in fact, has no code of conduct other than- Well, what we've got is- Go ahead. Isn't it proper for an agency to look at a model code, not adopt it, but maybe use the parameters contained in that code? It may be proper, but unlike the case of- What is wrong with that? What's wrong with it is that it doesn't define conduct, and it enables the agency to recalibrate charges against judges or pick judges that they want to target and then find something to use for that code. So if I'm involved in a bitter divorce with my husband, and he makes allegations against me, and the agency wants me removed because I, like Judge Long, who was characterized as a low producer, if the agency wants to target me, they can come up with any hodgepodge of characterizations about my conduct. Okay, this is- What would an acceptable standard look like? An acceptable standard, I don't dispute that the ABA model code, which outlines certain characteristics that a judge needs to have, good temperament, calmness, fairness, preparation. I mean, there are many things that a judge is required of having. But I think that what you need to have here is- I'm sorry. If the agency had adopted the ABA model code, put aside the credibility issues here, the removal would have been okay. No, because the agency never connected the conduct of Judge Long with his inability to perform judicial duties. What they did was they jumped to conclusions based on allegations, assertions. Remember, there is evidence- What does that mean? So you're saying the standard should be that the agency should have to prove or establish that the judge was unable to perform his duties as a consequence of whatever it is that happened? Yes. That's what you're saying? There needs to be a nexus. Whether it's a nexus or not, you're saying that they have to demonstrate that the judge would have been unable to perform his duties? Is that your standard? Unable to perform his duties or that it so undermined his ability to be the embodiment of an impartial adjudicator that his removal could be wanted? What about the standard that the board adopted undermined public confidence? What's wrong with that? Well, first of all, the public didn't know about it. Okay? The public didn't know about it except that the agency publicized it. This incident was self-reported by Judge Long. The agency found out about it. Two weeks later, the SSA commissioner was on Capitol Hill talking about it in the context of a conversation about a 750,000 case backlog that judges are being blamed for. And in the record is the testimony of that commissioner stating basically that he was frustrated with the way that judges had been disciplined in the past by the MSPB. And so this case took on, you know, Judge Long became the poster boy for bad judicial conduct, undermining the judiciary. In fact, the public did not know about it. And when Judge Long returned to work and no one complained about him being in the office, not his colleagues, not his coworkers, no one in the public knew about it. Was that the case of any criminal conviction? I mean, the public, I mean, not all of this stuff is reported even though that would be a matter of public record. Would that be, I thought you acknowledged to Judge Dyke earlier that that would be sufficient. So where do you, I mean. No. What is your standard for the public needing to know? I. To be on the front page of a newspaper? Well, there are cases, and in Ray's case of judicial misconduct is perfect. The Ninth Circuit case where the judge had pornography on his computer. It was the cover of the LA Times. It made all the newspapers. Well, just because some of those instances are sufficient to establish good cause doesn't mean that good cause necessarily requires that as a precedent. No, but there are many things that go on in our private lives that perhaps if they became public would undermine the judiciary or the public's view of the judiciary. Did the neighbors know about the incident? Two neighbors knew about the incident, Your Honor, because the claimants, the Judge Long's companion ran to their house. Two neighbors knew about it. Broward County has a practice of publicizing someone's mugshot when they get arrested. The agency knew about that mugshot, again, because it was self-reported by Judge Long. Yeah, but what you seem to be saying, which seems to me to be very difficult, is that there's no concern about public confidence unless it is written up in the media or appears on a blog in the Internet or something. That seems like an odd standard. No, that's not what I'm saying, Your Honor. What I'm saying is the case law shows that if the agency has bad publicity, and that was something that the agency, SSA, was very worried about, bad publicity about this case. There was no bad publicity. Was it an unfortunate circumstance? Yes. Were the facts unsavory? Yes. Was Judge Long the aggressor? No. Was his conduct intentional? No. Was this an unintentional act where he was defending himself and trying to care for his young child? Yes, all of those facts were discounted. Well, I find that somewhat disconcerting that you make that allegation, since the woman in this case was 5'1", and Judge Long was about 6'2". Right. And the physical differences in some of the resulting evidence that's in the record, at least, shows that she was hit. Well, Your Honor, I would respectfully disagree, because if Judge Long, who was 6'2", or 3", or 6", had hit a woman of 5'3", stature, with his fist repeatedly, the pictures would not have shown what they showed. And, in fact, he was sleeping, and awakened, and provoked. They did show some marks. Some marks that could have been caused by the baby she was holding, and the baby was flailing around. I'm trying this case here. We've got board findings. I know your co-counsel is arguing that some of those shouldn't have been overturned. But assuming that we accept the board's findings, we don't get to redo this case. Well, Your Honor, I don't think you can accept the board's findings. I mean, it's inherently and patently unfair. I mean, judges are not superhuman. There are mistakes made. Perhaps counseling or progressive discipline could have been considered in this case. But because there was a political backdrop, this case snowballed even after the criminal charges were dropped. Even after the political backdrop, as you put it, influenced the outcome. Because it's obvious from the testimony, Your Honor, I believe, before ALJ Genasi, that the Commissioner had a stated plan to discipline judges, a war on judges, if you will, and was not going to let this stop no matter what. The criminal charges were dropped. Well, what's the implication, the inference that you're making from the record? It is an inference, yes. It is in the record. It is in the record, Your Honor. There was an attempt to remove all judges. Not all judges. This action that was taken by the agency to remove judges. I'm suggesting that there is enough evidence in the record and things that I can't discuss that are outside the record that imply that this case was not handled fairly. This judge was not handled fairly. There was no due process. He was railroaded. It was snowballing. From the minute that the Commissioner got the idea that there was a domestic violence case, an abuser, the case snowballed. And they never stopped. We can all make assumptions under the record, but it is not in the record. So I think you've had enough time to present the case. Thank you. Thank you, Your Honor. May it please the Court. This Court should affirm the Board's decision because I didn't hear about the provocation finding because the A.J. found that there was provocation. The Board said there wasn't. It seems to me that the provocation issue is a credibility-based finding. And, indeed, this transcript on which the Board relied so heavily at 100 of the Joint Appendix shows Ms. Castro at the time saying that she engaged in provocation. So how can the Board's finding of lack of provocation be sustained? The Board's finding of lack of provocation can be sustained for the very reasons that the Board included in its opinion, which is that although it's undisputed that Ms. Castro did push Judge Long when she discovered that he was asleep and did not have the baby, he then struck her. Wait, wait. Don't interrupt me, please. Okay? Look at page 20 of the opinion here. It says Ms. Castro struck her spine and attempted to get away from him after he could and grabbed her when she woke up. That is contrary to the A.J.'s finding, and it's contrary to the transcript. Your Honor, it is contrary to the A.J.'s finding, but that's perfectly— It is also contrary to the transcript, is it not? It's not contrary to the transcript because what the Board found was that— Look at page 100 of the transcript. I'm sorry, that page is not in the— Page 99 to 100 of the transcript. She was asked, was this before you were struck or after? Before. Before you were struck. Correct, Your Honor. There's no— Wait. Do not interrupt me, please. And it said, what did you do? Push him. Okay. And hit him with the hand closed or open? I think with this. And he said with the hand closed. And she said, where did you hit him? In the back. That is inconsistent with what the Board found, is it not? The Board acknowledged that she initially provoked him to lash out in the bedroom. The Board did not find that she hit him before he hit her. Correct. The Board did find that. So that is contrary to this transcript. No, the Board found that she struck him first or pushed him. No, it did not. Take a look at page 26. The finding of the Board is Ms. Castro struck a respondent and attempted to get away from him after he pushed and grabbed her. Well, I think the testimony was that she had shook him to wake him up. No, the testimony in the transcript is that she hit him with a closed fist before he did anything. That was her testimony at the hearing. No, this is the transcript that was taken at the time by the officer. Okay. But the Court's point seems to go to this issue of provocation. The Board did not rest its finding on provocation. I'm saying there's a finding of the Board which is not supported by the contemporaneous transcript and which, in fact, is directly contrary to the contemporaneous transcript. Okay, to the extent that there is an inconsistency. The Board's finding of provocation didn't go to what happened in the bedroom. The Board's finding of provocation went to the escalation that occurred thereafter. The Board found that there was no justification or grounds for Judge Long to then follow Ms. Castro out of the bedroom, to hit her in the kitchen, to hit her in the bathroom, then to get angry when she wanted to call the police, to follow her out of the house, to strike her and punch her outside the house, and to then take the baby away from her when she arrived at the Phoenix. What you're saying is the Board made a factual error, but it didn't matter. It was harmless because that error didn't affect the result. Well, because the Board admitted that... No, is that what you're saying? If the Court's reading of the transcript and the opinion is correct, then there may be a slight discrepancy in the Board's opinion. But the fact of the matter is the Board acknowledged that she started it. I think your answer to Judge Hegg's question is yes. Okay, yes. So now getting back to the question of whether or not the Board overturned demeanor-based credibility findings by the administrative judge, that is incorrect. There is only one demeanor-based finding in... We just identified a finding by the A.J. that was overturned, that was based on credibility, and that there was no basis for overturning it. But I think the Court is conflating credibility with the concept of demeanor-based credibility. Under the Hegg decision, there are seven different grounds for credibility findings, only one of which is demeanor-based, and this Court has made it clear that the Board is free to reweigh the evidence and reach different conclusions on credibility except with respect to demeanor-based credibility determinations. And that is exactly what happened in this case. The Board has plenary authority to hear these cases, and when they're assigned to administrative judges, that doesn't mean that the Board cannot review the A.J.'s decision and reweigh the evidence and reach different conclusions. The only exception to that is when there are demeanor-based credibility determinations. And here, the only demeanor-based credibility determination made by Judge Giannassi had to do with this issue of remorse, which he felt that Judge Long showed real remorse. But the Board found... The Board didn't doubt that Judge Giannassi felt remorse, but the Board found that he was more remorseful about the fact that this had happened to him and that he was going to lose his job, not about the fact that domestic violence had taken place. So it gave different weight to that remorse. But that was only one aspect, and that was in the context of the penalty determination. It was only one aspect of the penalty determination. The Board also found that Douglas factors 1, 2, and 10 were met, and neither Judge Long nor the Association of Administrative Law Judges seriously contest those factual findings. What about the rehabilitation? I think that the remorse finding was made in the context of rehabilitation. But Judge Cristado and Judge Garman... Did the Board make a finding about rehabilitation? Yes. The Board, yes. The Board found that they didn't see a good chance of rehabilitation because Judge Long did not acknowledge what he had done. It's the remorse. Yes. With respect to... I would also point out that both Judge Giannassi also sustained Specification 1. He also found that a violent attack had taken place. Violent is his word, not mine. And he also, although Judge Long's counsel makes much of so-called demeanor-based credibility determinations with respect to the testimony of Judge Long and Ms. Castro, Judge Giannassi actually questioned the veracity and reliability of their testimony. Yeah, but at the end of the day, the A.J. in this case described what had occurred that evening as being mutual flailing, right? That's correct. That's far different from how the Board didn't characterize it in one term. But certainly the Board's obvious take on what was highlighted. The Board chose to weigh the evidence very differently than Judge Giannassi did. That's the problem. The key point is that Judge Giannassi didn't necessarily believe what he was hearing from Judge Long and Ms. Castro. He said, as is often the case during a heated altercation, the participants themselves may not know precisely what was said and done, although they may sincerely believe the accuracy of their recollection of events. That's at page 44 of the joint appendix. The Board placed far more weight on the contemporaneous statements that were made on the night of the altercation and the incident reports taken by Officer Madison, by Officer Coleman, and by Officer Reynoso, by the Phoenix testimony, and the deposition of Anna Long, who was Judge Long's daughter. Those out-of-court statements could not have been the subject of demeanor-based credibility determinations. So the Board was free to re-weigh the evidence. But they also don't deal with the issue of provocation either. The provocation issue goes to the penalty. That's the discussion of provocation. But that's a finding. That's correct. As the Board found, even assuming that Ms. Castro first provoked Judge Long, his escalation of the violence outweighed that initial provocation. Moving to the question of whether the Board applied the correct standard. First, Judge Long's counsel seems to acknowledge that the standard applied by the Board was appropriate. And Judge Stagno, although she says the standard was incorrect, seems to acknowledge that the ABA Model Code of Judicial Conduct is an appropriate guideline pursuant to which the Board can judge the conduct of administrative law judges to determine whether there is good cause for misconduct. But is the standard that we're talking about very subjective or objective? Undermining public confidence. That's a very subjective type of a standard that we're talking about, isn't it? No, it's not. It's not subjective in that I think in the context of judges, it's not difficult to look at actions taken by a judge to determine whether or not that is something that the public would expect a judge to do. When a judge continually punches his domestic partner, I don't think anyone... That sounds as though any criminal act by a judge undermines public confidence because the public doesn't expect judges to commit criminal acts, right? Well, it depends on how you define the criminal act. If it's a misdemeanor, one misdemeanor speeding ticket... This is a misdemeanor, isn't it? It may be a misdemeanor, but my point is that a speeding ticket is something that I think the public would not view as an infraction that would undermine... So any criminal offense other than a speeding ticket or a parking ticket? I would say any criminal offense that involves violence against another person. How about moral turpitude? Depending on what type of moral turpitude act... If you're talking about sexual type, consensual sexual activity, that could be a very different thing. That's very subjective. It is, but that's not what we're talking about here. I know that the court grappled with that issue in the Doe decision and dealing with the FBI's policies and regulations regarding romantic activity when off-duty, but the court, even under the nexus standard, which is not the same as the good cause standard but can provide guidance, has found that sexual type misconduct, even if not convicted, can be grounds for good cause. I mean, there's the Cooper case where a man was not prosecuted for sexual misconduct with a minor child, but he was removed, notwithstanding the fact that he was a civilian engineer. The reason was because it adversely affected his employer employment. Suppose that the postal worker had been engaged in domestic abuse. Could the MSPB, a misdemeanor of domestic abuse, a single incident, could the MSPB hold a hearing and hold that the postal worker couldn't be removed so that that would promote the efficiency of the service? No impact on the workplace. It would depend if it were one incident, if it were for a postal carrier. I mean, there's at least one case where a postal carrier was removed for one incident of sexual misconduct because postal carriers go house to house. There are children in these houses. You're talking about like a- This incident, this incident, could a postal worker be removed for this incident? It's not entirely clear under the efficiency of the service standard, but we would distinguish an administrative law judge in this instance because the board has relied upon the ABA-modeled judicial code, which says that judges must act at all times in a manner that demonstrates integrity and independence and impartiality. But that's- In their personal- I understand the point, but the difficulty is that what you're saying is that administrative judges have less protection than postal workers. No, Your Honor, I'm not saying administrative judges have less protection than postal workers. I'm just saying that the duties of an administrative judge require a level of fitness that a postal worker who sits on a conveyor belt all day may not be subject to. This judge sits in what is supposed to be a non-confrontational way to resolve the conflicts of others, and the judge's supervisors found that he did not have the judicial temperament based upon this incident, that the demeanor that he exhibited in punching his domestic partner did not comport with how a judge should conduct himself. Judge Cristado testified that there are victims of domestic violence who appear before social security administration judges because sometimes they suffer from disabilities as a result of the domestic violence and that they may find that he wouldn't give them a fair shake and there may be the possibility of bias and recusal. And obviously, there's not evidence that that actually happened in this case, but this Court's decisions have said that the mere apprehension that there could be a problem is sufficient. If the voters were like Dove and there hadn't been any knowledge of this by the police or the neighbors or anything like that, this had been entirely private, but it was somehow disclosed as a result of a human resources leak or something, which is pretty much what happened in Dove. Would that be grounds for removal? It may be a more difficult case. Here, you know, it's undisputed that Ms. Castro left the house, contacted the police. Let me ask you a hypothetical. What's the answer to the hypothetical? If this had not become public, would it be grounds for removal? I would say yes. Yes. Violence against another person, particularly your domestic partner of the kind that Judge Long inflicted, would be grounds for removal, but this is not that case. Why would that be? Because judges shouldn't be attacking other people in violent ways. Judges should not be repeatedly punching other individuals. But it's not the public perception issue, is it, at that point? It's a sort of character issue, right? No, but that's equally relevant, and it doesn't comport with the agency's mission. It becomes a character issue, right? I'm sorry? Not necessarily. As I said, the fact that employees or the public doesn't know about it doesn't mean that it couldn't diminish public confidence. If the judge has engaged, I mean, the public does not need to know about it for the judge's supervisors to have doubts about his ability and fitness to adjudicate. Here, the supervisors were clear that they lost confidence in his ability after this incident, and the board's decision shows, based upon a preponderance of the evidence, that these acts took place. And there is substantial evidence in the record for this court to find that the acts took place and that, based upon the supervisor's testimony and the testimony of the Feeneys, that they couldn't believe that a judge had engaged in these acts and that the police involvement, that this was grounds, good cause, for removal. Unless the court has other questions. Thank you. Judge Roth. Thank you, Your Honor. On her argument, counsel for the government said that the agency had to remove Judge Long in this case because criminal acts undermined the confidence of the public in the administrative judiciary. Judge Long wasn't found to have committed any criminal acts in this case. In fact, Judge Giannassi found that the agency fell far, far short of proving the allegations in its complaint. Do you have to prove criminal acts, or is it almost like a burden of a criminal trial? Well, Your Honor, we cited the Bolts case in our brief, and in that case, the board held that when you choose to use a generic charge such as conduct unbecoming, that you should look to the specifications and the factual allegations of the complaint to determine exactly what it is, that the employee is being charged with. In this case, even a cursory review of the amended complaint in this matter shows that Judge Long was charged by the agency with committing domestic battery. They didn't prove that. And under Bolts, at least the element of intent should have been proven, and that goes exactly to the provocation issue. If Judge Long was indeed provoked and that he simply used force to defend himself and the argument was over actually protecting their child, it's hard to see how he could possibly have had the intent required to prove a battery. He simply didn't in this case, although the agency certainly pled that. In fact, in the complaint they said, the agency will establish that Judge Long engaged in conduct unbecoming by repeatedly and violently hitting, grabbing, and pushing Ms. Castro, causing physical injuries to Ms. Castro and the child. There were no physical injuries to Ms. Castro and the child. They refused medical treatment. Judge Long went to the hospital. He had a mini-stroke, and we submitted a medical report showing that he suffered 11 defensive bruises on his arms and his back from the attack by Ms. Castro. Now certainly Judge Long regrets that this incident never occurred, but to say that he committed a battery in this case that undermines judicial competence in the judiciary is simply incorrect. Judge Giannosti was faced with a very difficult fact situation in this case. We had two eyewitnesses to the incident, which were Judge Long and Ms. Castro. We had four other witnesses who had second and third hearsay accounts to offer, and Judge Giannosti found, we believe correctly, that the language barrier between Ms. Castro and the people on the night of the incident was very significant here. She had to testify through an interpreter at trial. Judge Giannosti personally tried to question her in English at a few points and determined she couldn't understand English well enough to communicate. All of the agency witnesses said, we had no problem. If that was the case, why did the police call in an interpreter to take a statement in Spanish that was possibly translated to English? Again, the language barrier was huge here, and Judge Giannosti made detailed, demeanor-based credibility findings on his observation. They should stand. The case should be reversed, and the charges against Judge Long were not proven, so he should be allowed to go back to work as an administrative judge. Thank you, Mr. Sheriff. Thank you.